**UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF CALIFORNIA**
**SACRAMENTO DIVISION**

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, | Case No.: 2:15-cv-01581-GEB-KJN |
| Plaintiff, | STIPULATED FINAL JUDGMENT AND ORDER |
| v. | |
| STUDENT FINANCIAL AID SERVICES, INC., | |
| Defendant. | |

The Consumer Financial Protection Bureau (Bureau) commenced this civil action on July 23, 2015, to obtain injunctive relief, damages, civil money penalties, and other relief from Student Financial Aid Services, Inc. (SFAS). In connection with SFAS's marketing, sales, and billing practices, the Complaint alleges violations of sections 1031 and 1036 of the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5531 and 5536; the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6101 et seq., and its implementing rule, the Telemarketing Sales Rule (TSR), 16 C.F.R. Part 310; and the Electronic Fund Transfer Act (EFTA), 15 U.S.C. § 1693e(a), and Regulation E, 12 C.F.R. § 1005.10(b). The Bureau and SFAS, by and through counsel, request that the Court enter this Stipulated Final Judgment and Order (Order).

**FINDINGS**

1.      This Court has jurisdiction over the parties and the subject matter of this action.

2.      All parties agree to entry of this Order, without adjudication of any issue of fact or law, to settle and resolve all matters in this dispute arising from the conduct alleged in the Complaint to the date this Order is entered.

3.      Defendant SFAS neither admits nor denies any allegation in the Complaint, except as stated in this Order. For purposes of this Order, SFAS admits the facts necessary to establish the Court's jurisdiction over SFAS and the subject matter of this action.

4.      SFAS waives service under Rule 4(d) of the Federal Rules of Civil Procedure and waives all rights to seek judicial review or otherwise challenge or contest the validity of this Order. SFAS also waives any claim it may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action to the date of this Order. Each party will bear its own costs and expenses, including, without limitation, attorneys' fees.

5.      Entry of this Order is in the public interest.

**DEFINITIONS**

6.      The following definitions apply to this Order:

      a.   **"Affected Consumer"** means any consumer who purchased Defendant's Gold and Combo services and, during the Relevant Period, was charged for Defendant's FAFSA preparation services in a year in which the consumer did not use Defendant's service to submit a FAFSA to the U.S. Department of Education.

      b.   **"Affiliate"** means any subsidiary, parent, or sibling corporation of Defendant.

      c.   **"Effective Date"** means the date on which the Stipulated Final Judgment and Order is entered.

      d.   **"Electronic Fund Transfer"** has the same meaning as defined by 12 C.F.R. § 1005.3(b).

e. **"Enforcement Director"** means the Assistant Director of the Office of
Enforcement for the Consumer Financial Protection Bureau, or his or her
delegee.

f. **"Free Application for Federal Student Aid" or "FAFSA"** means the
free application used by the U.S. Department of Education to determine a
student's eligibility for federal, state, and institutional assistance programs.

g. **"Gold and Combo Services"** means the FAFSA preparation services
Defendant marketed and sold under the names "FAFSA Gold," "FAFSA
Gold Combo," and the "FAFSA + College Cost & Planning Report" or
"FAFSA CCPR Combo" package.

h. **"Negative Option Feature"** has the same meaning as defined by 16
C.F.R. § 310.2(u).

i. **"Preauthorized Electronic Fund Transfer"** has the same meaning as
defined by 12 C.F.R. § 1005.2(k).

j. **"Related Consumer Action"** means a private action by or on behalf of
one or more consumers or an enforcement action by another governmental
agency brought against Defendant based on substantially the same facts as
described in the Complaint.

k. **"Relevant Period"** means the period from July 21, 2011 to the Effective
Date.

l. **"Defendant"** means Student Financial Aid Services, Inc., and its
successors and assigns.

m. **"Standard Service"** means FAFSA preparation services offered by
Defendant, online or by telephone, without a Negative Option Feature. This
includes services marketed and sold under the names "FAFSA Live,"
"Express FAFSA," "College Cost & Planning Report," and the "College
Plan."

n.  **"Telemarketing"** has the same meaning as defined by 16 C.F.R. § 310.2(dd).

o.  **"Upselling"** has the same meaning as defined by 16 C.F.R. § 310.2(ee).

**ORDER**

**I**

**Conduct Provisions**

**IT IS ORDERED** that:

7.      Defendant and its officers, agents, servants, and employees who have actual notice of this Order, whether acting directly or indirectly, may not violate, including by failing to take reasonable measures to ensure that its service providers, Affiliates, or other agents do not violate: (a) sections 1031 and 1036 of the CFPA, 12 U.S.C. §§ 5531 and 5536; (b) the TSR, 16 C.F.R. Part 310, as authorized by the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6101 et seq.; or (c) the EFTA, 15 U.S.C. § 1693e(a), and its implementing regulation, Regulation E, 12 C.F.R. § 1005.10(b).

8.      Defendant and its officers, agents, servants, and employees who have actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promotion, offering for sale, sale, or performance of any consumer financial product or service, are permanently restrained and enjoined from misrepresenting, or assisting others in misrepresenting, expressly or impliedly:

a.  The cost or price of such product or service;

b.  Any recurring charges or Negative Option Features associated with such product or service;

c.  That any consumer has provided authorization for future, automatic charges; or

d.  Any other fact material to consumers concerning any good or service, including, without limitation, its total cost; any material restrictions,

limitations, or conditions; or any material aspect of its performance, efficacy, nature, or central characteristics.

9.     Defendant and its officers, agents, servants, and employees who have actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promotion, offering for sale, sale, or performance of any consumer financial product or service, are permanently restrained and enjoined from engaging in any of the following activities, directly or indirectly:

   a.   Attaching a Negative Option Feature to any product or service that results in automatic charges to the consumer for future services; or

   b.   Initiating a Preauthorized Electronic Fund Transfer from a consumer account without a writing signed or similarly authenticated by the consumer, and without providing a copy to the consumer. An authorization is valid only if it is readily identifiable as such and the terms of the preauthorized transfer are clear and readily understandable.

10.    As of the Effective Date, Defendant has canceled and must not reinitiate recurring, automatic charges, except those for which the Company has a separate, express, written authorization from the consumer agreeing to the specific amounts and schedule of charges.

11.    Within 30 days of the Effective Date, Defendant will adopt reasonable procedures for distinguishing between payments made by Electronic Fund Transfer or by some other means.

## II

## Compliance Plan

**IT IS FURTHER ORDERED** that:

12.    Within 30 days of the Effective Date, Defendant must submit to the Enforcement Director for review and determination of non-objection a comprehensive compliance plan designed to ensure that Defendant's sales and billing practices, in connection with FAFSA

preparation services, comply with all applicable Federal consumer financial laws and the terms of this Order (Compliance Plan). The Compliance Plan must include, at a minimum:

    a.    Detailed steps for addressing each action required by this Order; and

    b.    Specific timeframes and deadlines for implementation of the steps described above.

13.    The Enforcement Director will have the discretion to make a determination of non-objection to the Compliance Plan or direct the Defendant to revise it. If the Enforcement Director directs the Defendant to revise the Compliance Plan, the Defendant must make the revisions and resubmit the Compliance Plan to the Enforcement Director within 30 days.

14.    After receiving notification that the Enforcement Director has made a determination of non-objection to the Compliance Plan, the Defendant must implement and adhere to the steps, requirements, deadlines, and timeframes outlined in the Compliance Plan.

### III

### Order to Pay Redress

**IT IS FURTHER ORDERED** that:

15.    A judgment for equitable monetary relief and damages is entered in favor of the Bureau and against Defendant, in the amount of $14,500,000, for the purpose of providing redress to Affected Consumers for the alleged violations of law described in the Complaint; however, full payment of this judgment will be suspended upon satisfaction of the obligations in paragraphs 16 and 25 of this Order, and subject to Section IV of this Order.

16.    Within 10 days of the Effective Date, Defendant must pay to the Bureau, by wire transfer to the Bureau or to the Bureau's agent, and according to the Bureau's wiring instructions, $5,200,000, towards the judgment referenced in paragraph 15 of this Order.

17.    With regard to any redress that Defendant pays under this Section, if Defendant receives, directly or indirectly, any reimbursement or indemnification from any source, including, but not limited to, payment made under any insurance policy, or if Defendant secures a tax deduction or tax credit with regard to any federal, state, or local tax, Defendant

must: (a) immediately notify the Enforcement Director in writing, and (b) within 10 days of receiving the funds or monetary benefit, transfer to the Bureau the full amount of such funds or monetary benefit (Additional Payment) to the Bureau or to the Bureau's agent according to the Bureau's wiring instructions. After the Bureau receives the Additional Payment, that payment will be applied toward the judgment entered in paragraph 15 and the amount of the suspended judgment referenced in paragraph 15 will be reduced by the amount of the Additional Payment.

18.     Any funds received by the Bureau in satisfaction of this judgment will be deposited into a fund or funds administered by the Bureau or the Bureau's agent according to applicable statutes and regulations to be used for redress for injured consumers, including, but not limited to, refund of moneys, restitution, damages, or other monetary relief, and for any attendant expenses for the administration of any such redress.

19.     If the Bureau determines, in its sole discretion, that redress to consumers is wholly or partially impracticable or if funds remain after redress is completed, the Bureau will deposit any remaining funds in the U.S. Treasury as disgorgement. Defendant will have no right to challenge any actions that the Bureau or its representatives may take under this Section.

20.     Payment of redress to any Affected Consumer under this Order may not be conditioned on that Affected Consumer waiving any right.

**IV**

**Effect of Misrepresentation or Omission Regarding Financial Condition**

**IT IS FURTHER ORDERED** that:

21.     The Bureau's agreement to entry of this Order was expressly premised on the truthfulness, accuracy, and completeness of Defendant's financial statements and supporting documents submitted to the Bureau in June 2015, which Defendant asserts are truthful, accurate, and complete.

22.     If the Court determines that Defendant has failed to disclose any material asset or that any of its financial statements contain any material misrepresentation or omission,

including materially misstating the value of any asset, then the suspension of the monetary judgment entered in Section III will be terminated, and the Bureau can seek to enforce in any Federal district court as immediately due and payable the full judgment entered in Section III of this Order, $14,500,000, less any amounts paid under Section III of the Order.

23.     After the reinstatement of the monetary judgment under this Section, the Bureau will be entitled to interest on the judgment, computed from the date of entry of this Order, at the rate prescribed by 28 U.S.C. § 1961, as amended, on any outstanding amounts not paid.

**V**

**Order to Pay Civil Money Penalties**

**IT IS FURTHER ORDERED** that:

24.     Under section 1055(c) of the CFPA, 12 U.S.C. § 5565(c), by reason of the violations of law alleged in the Complaint, and taking into account the factors in 12 U.S.C. § 5565(c)(3), Defendant must pay a civil money penalty of $1.00 to the Bureau.

25.     Within 10 days of the Effective Date, Defendant must pay the civil money penalty by wire transfer to the Bureau or to the Bureau's agent in compliance with the Bureau's wiring instructions.

26.     The civil money penalty paid under this Order will be deposited in the Civil Penalty Fund of the Bureau as required by section 1017(d) of the CFPA, 12 U.S.C. § 5497(d).

27.     Defendant must treat the civil money penalty paid under this Order as a penalty paid to the government for all purposes. Regardless of how the Bureau ultimately uses those funds, Defendant may not:

      a.    Claim, assert, or apply for a tax deduction, tax credit, or any other tax benefit for any civil money penalty paid under this Order; or

      b.    Seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made under any insurance policy, with regard to any civil money penalty paid under this Order.

28.     To preserve the deterrent effect of the civil money penalty in any Related Consumer Action, Defendant may not argue that Defendant is entitled to, nor may Defendant benefit by, any offset or reduction of any compensatory monetary remedies imposed in any Related Consumer Action because of the civil money penalty paid in this action (Penalty Offset). If the court in any Related Consumer Action grants such a Penalty Offset, Defendant must, within 30 days after entry of a final order granting the Penalty Offset, notify the Bureau, and pay the amount of the Penalty Offset to the U.S. Treasury. Such a payment will not be considered an additional civil money penalty and will not change the amount of the civil money penalty imposed in this action.

## VI

### Additional Monetary Provisions

**IT IS FURTHER ORDERED** that:

29.     In the event of any default on Defendant's obligations to make payment under this Order, interest, computed under 28 U.S.C. § 1961, as amended, will accrue on any outstanding amounts not paid from the date of default to the date of payment, and will immediately become due and payable.

30.     Defendant must relinquish all dominion, control, and title to the funds paid to the fullest extent permitted by law and no part of the funds may be returned to Defendant.

31.     Under 31 U.S.C. § 7701, Defendant, unless it already has done so, must furnish to the Bureau its taxpayer identifying numbers, which may be used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

32.     Within 30 days of the entry of a final judgment, consent order, or settlement in a Related Consumer Action, Defendant must notify the Enforcement Director of the final judgment, consent order, or settlement in writing. That notification must indicate the amount of redress, if any, that Defendant paid or is required to pay to consumers and describe the consumers or classes of consumers to whom that redress has been or will be paid.

33.     Under section 604(a)(1) of the Fair Credit Reporting Act, 15 U.S.C.§ 1681b(a)(1), any consumer reporting agency may furnish a consumer report concerning Defendant to the Bureau, which may be used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

## VII

## Reporting Requirements

**IT IS FURTHER ORDERED** that:

34.     Defendant must notify the Bureau of any development that may affect compliance obligations arising under this Order, including but not limited to, a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor company; the creation or dissolution of an Affiliate that engages in any acts or practices subject to this Order; the filing of any bankruptcy or insolvency proceeding by or against Defendant; or a change in Defendant's name or address. Defendant must provide this notice at least 30 days before the development or as soon as practicable after learning about the development, whichever is sooner.

35.     Within 10 days of the Effective Date, Defendant must:

    a.     Designate at least one telephone number and email, physical, and postal address as points of contact, which the Bureau may use to communicate with Defendant;

    b.     Identify all businesses for which Defendant is the majority owner, or that Defendant directly or indirectly controls, by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; and

    c.     Describe the activities of each such business, including the products and services offered, and the means of advertising, marketing, and sales.

36.     Defendant must report any change in the information required to be submitted under paragraph 35 at least 30 days before the change or as soon as practicable after the learning about the change, whichever is sooner.

37.     Within 90 days of the Effective Date, and again one year after the Effective Date, Defendant must submit to the Enforcement Director an accurate written compliance progress report (Compliance Report) which, at a minimum:

> a.     Describes in detail the manner and form in which Defendant has complied with this Order; and
>
> b.     Attaches a copy of each Order Acknowledgment obtained under Section VIII unless previously submitted to the Bureau.

## VIII

## Order Distribution and Acknowledgment

**IT IS FURTHER ORDERED** that:

38.     Within 30 days of the Effective Date, Defendant must deliver a copy of this Order to any managers, employees, service providers, or other agents and representatives who have responsibilities related to the subject matter of the Order.

39.     For 5 years from the Effective Date, Defendant must deliver a copy of this Order to any business entity resulting from any change in structure referred to in Section VII, any future board members and executive officers, and any managers, employees, service providers, or other agents and representatives who will have responsibilities related to the subject matter of the Order before they assume their responsibilities.

40.     Defendant must secure a signed and dated statement acknowledging receipt of a copy of this Order, ensuring that any electronic signatures comply with the requirements of the E-Sign Act, 15 U.S.C. § 7001 et seq., within 30 days of delivery, from all persons receiving a copy of this Order under this Section.

# IX

## Recordkeeping

**IT IS FURTHER ORDERED** that:

41.     Defendant must create, for at least 5 years from the Effective Date, the following business records:

        a.      All documents and records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Bureau.

        b.      Copies of all sales scripts; training materials; advertisements; websites; and other marketing materials; and including any such materials used by a third party on behalf of Defendant.

        c.      Copies of all written authorizations provided by consumers and proof of production to consumers of such written authorizations for payments made by Preauthorized Electronic Fund Transfers.

        d.      For all fee for service student aid preparation services that are paid for by consumers, accounting records showing the gross and net revenues generated by the services.

        e.      All consumer complaints regarding billing and refund requests (whether received directly or indirectly, such as through a third party), and any responses to those complaints or requests.

42.     Defendant must retain the documents identified in paragraph 41 for at least 5 years.

43.     Defendant must make the documents identified in paragraph 41 available to the Bureau upon the Bureau's request.

# X

## Notices

**IT IS FURTHER ORDERED** that:

44.     Unless otherwise directed in writing by the Bureau, Defendant must provide all submissions, requests, communications, or other documents relating to this Order in writing, with the subject line, "In re Student Financial Aid Services, Inc., No. 2013-0839-02," and send them either:

a.  By overnight courier (not the U.S. Postal Service), as follows:

> Assistant Director for Enforcement
> Consumer Financial Protection Bureau
> ATTENTION: Office of Enforcement
> 1625 Eye Street, N.W.
> Washington D.C. 20006; or

b.  By first-class mail to the below address and contemporaneously by email to Enforcement_Compliance@cfpb.gov:

> Assistant Director for Enforcement
> Consumer Financial Protection Bureau
> ATTENTION: Office of Enforcement
> 1700 G Street, N.W.
> Washington D.C. 20552

# XI

## Cooperation with the Bureau

**IT IS FURTHER ORDERED** that:

45.     Defendant must cooperate fully to help the Bureau determine the identity and location of each Affected Consumer, as well as the amount charged for which redress is ordered. Defendant must provide such information in its or its agents' possession or control within 21 days of receiving a written request from the Bureau.

## XII

## Compliance Monitoring

**IT IS FURTHER ORDERED** that:

46.    Within 21 days of receipt of a written request from the Bureau, Defendant must submit additional Compliance Reports or other requested information, which must be made under penalty of perjury; provide sworn testimony; or produce documents.

47.    Defendant must permit Bureau representatives to interview any employee or other person affiliated with Defendant who has agreed to such an interview. The person interviewed may have counsel present.

48.    Nothing in this Order will limit the Bureau's lawful use of civil investigative demands under 12 C.F.R. § 1080.6 or other compulsory process.

## XIII

## Modifications to Non-Material Requirements

**IT IS FURTHER ORDERED** that:

49.    Notwithstanding the provisions of paragraph 51, any time limits for performance fixed by this Order may be extended by mutual written agreement of the parties and without further Court approval. Additionally, details related to administration of Sections VII through XII of this Order may be modified by written agreement of the parties and without further Court approval. Any other modifications to this Order may be made only upon approval of the Court, upon motion by any party.

## XIV

## Release

50.    The Bureau releases and discharges Defendant from all potential liability for law violations that the Bureau has or might have asserted based on the practices described in the Complaint, to the extent such practices occurred before the Effective Date and the Bureau knows about them as of the Effective Date. The Bureau may use the practices described in this Order in future enforcement actions against Defendant and its Affiliates, including,

without limitation, to establish a pattern or practice of violations or the continuation of a pattern or practice of violations or to calculate the amount of any penalty. This release does not preclude or affect any right of the Bureau to determine and ensure compliance with the Order, or to seek penalties for any violations of the Order.

## XV

## Retention of Jurisdiction

51.     The Court will retain jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.


Dated:   September 11, 2015


_____
GARLAND E. BURRELL, JR.
Senior United States District Judge